[Cite as *Total Quality Logistics, L.L.C. v. Red Chamber Co.*, 2017-Ohio-4369.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | CASE NO. CA2016-09-062 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>6/19/2017 |
| - vs - | : | |
| | : | |
| RED CHAMBER CO., et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013-CVH-1841

Lindhorst & Dreidame, Barry Fagel and Matthew Curran, 312 Walnut Street, Suite 3100, Cincinnati, Ohio 45202, for plaintiff-appellee

David Prince and Miles Prince, 1912 East Vernon Avenue, Suite 100, Los Angeles, California 90058, for defendant-appellant

Durkee and Uhle, Richard Uhle, Jr., 285 E. Main Street, Batavia, Ohio 45103, for defendant-appellant

**S. POWELL, J.**

{¶ 1}   Defendant-appellant, Red Chamber Co. ("RC"), appeals a decision of the Clermont County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, Total Quality Logistics, LLC ("TQL").

{¶ 2}   In 2008, RC, a seafood distributor began using TQL's services as a freight

broker to transport RC's products to its customers. In turn, as a broker, TQL contracted with third-party trucking companies to transport the products across the country. A credit agreement governed this working relationship, and provided:

> Applicant understands motor carriers under contract with [TQL] are required to maintain cargo loss and damage liability insurance in the amount of $100,000.00 per shipment. Please sign below acknowledging that [l]oads valued in excess of $100,000[.00] will not be tendered without enough prior written notification to TQL to allow TQL and its carriers the opportunity to arrange for increased insurance limits. Failure to provide timely written notice will result in your loads not being insured to the extent the value exceeds $100,000.00.

{¶ 3} In April 2013, RC contracted with TQL to arrange the transport of RC's goods from California to Florida. In turn, TQL retained Wells Trucking to transport and deliver RC's goods. During transport, an unknown third-party stole the load of goods valued at $186,450, which RC never recovered. TQL brought this action against RC claiming it had breached the credit agreement by failing to pay for 13 other brokered shipments between April 2, 2013 and July 5, 2013, and alleged damages of $53,402, plus interest, collection costs, and attorney fees. RC counterclaimed, asserting the loss of the value of the stolen goods was a result of TQL's breach of contract, negligence, and negligent supervision and hiring. TQL filed a third-party complaint against Wells Trucking alleging negligence and seeking indemnification. Wells Trucking's insurance carrier settled with RC for $100,000. In so doing, RC agreed to indemnify Wells Trucking for any claims by any other party for damages resulting from the loss.

{¶ 4} TQL moved for summary judgment on its breach of contract claim and RC's counterclaims. In so doing, TQL argued RC's counterclaims were barred by the doctrine of circular indemnity, preempted by the Carmack Amendment, 49 U.S.C. 14706(a), to the ICC Termination Act of 1995, 49 U.S.C. 14501(b), and fail on their merits as a matter of law. With respect to its breach of contract claim, TQL asserted RC's counterclaim was an attempt to

offset the damages from RC's nonpayment of the 13 other brokered shipments; therefore, TQL was entitled to judgment as a matter of law. The trial court granted summary judgment in favor of TQL on its claim and RC's counterclaims. The trial court found the ICCTA preempted RC's state law counterclaims. The trial court further found TQL met its burden of demonstrating an absence of a genuine issue of material fact regarding its claim, and that RC failed to rebut the evidence presented by TQL; therefore, TQL was entitled to judgment as a matter of law. This appeal followed.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEE ON APPELLANT'S COUNTERCLAIM.

{¶ 7} RC contends the trial court erred by sua sponte granting summary judgment in favor of TQL on grounds not offered in TQL's motion for summary judgment thereby denying RC a meaningful opportunity to respond. Specifically, RC asserts the trial court erred by relying on the ICCTA in granting summary judgment on RC's counterclaims in favor of TQL because, at no point during the pendency of the matter, was that section of the statute presented as a basis for summary judgment.

{¶ 8} We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14. Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, LLC*, 177

Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. *Id.*

{¶ 9} "A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), paragraph one of the syllabus. The moving party must state with particularity the areas of the opposing party's claim that do not raise a genuine issue of material fact and such assertion may be supported by evidence as allowed by Civ.R. 56(C). *Id.* at 115. A trial court, generally, may not sua sponte grant summary judgment upon grounds not raised by the prevailing party. *Marshall v. Aaron*, 15 Ohio St.3d 48, 50-51 (1984). Thus, a grant of summary judgment is improper when the nonmoving party has not had notice summary judgment may be entered against him. *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. Franklin No. 07AP-696, 2008-Ohio-1421, ¶ 22. However, a trial court does not deprive a party of a meaningful opportunity to respond where the party has notice of an issue. *See Revlock v. Lin*, 8th Dist. Cuyahoga No. 99243, 2013-Ohio-2544, ¶ 12; *Ballinger* at ¶ 23.

{¶ 10} Thus, the inquiry requires this court to examine the substance of the motion for summary judgment in the context of the statute to determine whether such notice was present. *See Ameriswiss Tech. v. Midway Line of Ill., Inc.*, 888 F.Supp.2d 197, 206 (D.N.H.2012) (stating applicability of the preemption statute hinges on the subject matter and effect of each claim). RC contends TQL argued its motion for summary judgment pursuant to only the Carmack Amendment, without any mention of the other sections of the ICCTA, and therefore, RC did not have notice of the issue upon which the trial court ruled, depriving RC of a meaningful opportunity to respond. Whereas, TQL asserts RC had such notice, as TQL

specifically argued federal preemption pursuant to an amendment to the ICCTA, and in so doing, cited several cases that thoroughly examined both the Carmack Amendment and the ICCTA.

{¶ 11} Pursuant to well-established principles of transportation law, cargo damage claims against interstate motor carriers are determined under the Carmack Amendment to the ICCTA. *Chubb Group Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F.Supp.2d 1064, 1068-69 (C.D.Cal.2002). Whereas the amendment does not specifically govern brokers in the scheme of interstate cargo loss and damage liability. *Id.* The ICCTA provides two potential theories of preemption. *Ameriswiss* at 204. The Carmack Amendment provides that:

> [a] carrier providing transportation or service * * * shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service * * * are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States * * *.

(Citations omitted.) 49 U.S.C. 14706(a)(1). Accordingly, the Carmack Amendment creates a federal statutory remedy on a bill of lading against both the originating and destination carrier. To assert a prima facie case pursuant to the Carmack Amendment, one must demonstrate (1) delivery to the carrier in good condition, (2) delivery failure or arrival in damaged condition, and (3) the amount of damages caused by the loss. *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 274 (1st Cir.2000).

{¶ 12} "It is accepted * * * that the principal purpose of the [Carmack] Amendment was to achieve national uniformity in the liability assigned to carriers." *Rini v. United Van Lines*, 104 F.3d 502, 504 (1st Cir.1997) (stating the preemptive effect of the Carmack Amendment over state law claims is well-established). Thus, the "Carmack Amendment impliedly

preempts state regulations related to damages for the loss or destruction of property during the course of interstate shipment." *Ameriswiss* at 204 (stating Congress impliedly preempts state law by creating a federal regulation scheme so pervasive so there is a reasonable inference Congress intended to leave no room for the State to supplement it), citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir.2008). Additionally, Congress may expressly preempt state law by including "language in the federal statute that reveals an explicit congressional intent to pre-empt state law." *Fitzgerald* at 52. In addition to the Carmack Amendment, the ICCTA expressly preempts state regulation of interstate transportation of goods. *Ameriswiss* at 204, discussing 49 U.S.C. 14501.

{¶ 13} The ICCTA provides, in pertinent part:

> a State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * or any motor private carrier, *broker*, or freight forwarder with respect to the transportation of property.

(Emphasis added.) 49 U.S.C. 14501(c)(1). The two theories of preemption are not mutually exclusive, as one's claims may be preempted impliedly by the Carmack Amendment, expressly by the ICCTA, or both. *Ameriswiss* at 205-06 (demonstrating any claim brought against a party in its capacity as a carrier is preempted by the Carmack Amendment, whereas any claim brought against a party in its capacity as a broker is preempted by the ICCTA).

{¶ 14} In its motion for summary judgment, TQL thoroughly argued the application of the Carmack Amendment to preempt RC's state law counterclaims. TQL asserted the Carmack Amendment only applies to carriers and freight forwarders. Thus, as a broker, TQL fell outside the parameters of permissible claims brought pursuant to the Carmack Amendment. Further, since the Carmack Amendment preempts state law claims in situations where carriers are held liable for actual loss or injury to property, RC's

counterclaims are preempted against TQL, even though it was a broker, because the claims stem from actual loss of property during transport by the carrier.

{¶ 15} The trial court declined to address TQL's preemption argument pursuant to the Carmack Amendment, and instead, found the ICCTA expressly preempted RC's state law counterclaims. Likewise, we need not address the validity of TQL's Carmack Amendment argument, and note, as the trial court found, the federal courts have inconsistently answered the question whether the Carmack Amendment extends to state law claims against brokers. *Compare Ameriswiss* at 208 (holding state law tort claims against broker preempted impliedly and expressly), *with Belnik, Inc. v. TBB Global Logistics, Inc.*, 106 F.Supp.3d 551, 560 (M.D.Pa.2015) (holding state law tort claims against broker only expressly preempted).

{¶ 16} No such inconsistency exists with respect to express preemption for state law claims under the ICCTA, as courts have repeatedly found that holding a broker liable for a negligence claim is subject to express preemption. *See, e.g.*, *ASARCO LLC v. Eng. Logistics Inc.*, 71 F.Supp.3d 990, 1006-07 (D.Ariz.2014) (finding that holding a broker liable for negligence "would certainly have more than a tenuous, remote or peripheral effect on rates and services"); *AIG Eur. Ltd. v. General Sys., Inc.*, 2014 U.S. Dist. LEXIS 99152, *12 (D.Md.2014) (July 22, 2014) (finding ICCTA expressly preempts negligence claim against broker who allegedly failed to select a carrier with sufficient insurance, as the "claim clearly relates to the service provided by a broker"); *Ameriswiss* at 206-07 (citing a series of cases finding ICCTA expressly preempts state law claims against a broker). Therefore, the trial court properly found the ICCTA expressly preempted RC's counterclaims.

{¶ 17} We next turn to the question of whether the trial court's finding deprived RC of a meaningful opportunity to respond under Civ.R. 56. Specifically, whether TQL's motion for summary judgment asserting implied preemption pursuant to the Carmack Amendment to the ICCTA provided sufficient notice of the possible applicability of the express preemption

section of the statute. We find TQL's motion for summary judgment provided such notice.

{¶ 18} As discussed above, a review of the statute itself and the supporting case law clearly indicates there are two avenues for federal preemption of state law claims related to actual loss or injury to property while in interstate transit. The well-established purpose behind preempting such state law claims is to achieve national uniformity in such cases where liability is imposed. *Rini v. United Van Lines*, 104 F.3d 502, 504 (1st Cir.1997). A review of authority relating to preemption pursuant to the Carmack Amendment and the ICCTA indicates review of one necessitates review of the other, because they are often interrelated and analyzed together. Contrary to RC's claim otherwise, the trial court did not deprive RC of a meaningful opportunity to respond because TQL's motion extensively cited authority demonstrating such interrelatedness.

{¶ 19} Additionally, this court has previously addressed a similar set of facts and found the nonmoving party was not deprived of a meaningful opportunity to respond. *See Hunter v. Wal-Mart Stores, Inc.*, 12th Dist. Clinton No. CA2001-10-035, 2002-Ohio-2604, ¶ 13. In *Hunter*, the plaintiff filed a negligence action against Wal-Mart in a slip-and-fall case. *Id.* at ¶ 1. In moving for summary judgment, Wal-Mart exclusively asserted the "open and obvious" defense. *Id.* at ¶ 12. The trial court rejected the "open and obvious" defense, but nevertheless, granted summary judgment in favor of Wal-Mart because the plaintiff failed to present credible evidence that Wal-Mart received constructive notice of the presence of a substance on the floor. *Id.* at ¶ 12. The plaintiff made the only mention of the constructive notice issue during the briefing stage of summary judgment and we upheld the trial court's grant of summary judgment on the issue in favor of Wal-Mart. *Id.* at ¶ 13. In so doing, we found the trial court did not deprive the plaintiff of a meaningful opportunity to respond where the moving party did not raise the issue in its motion. *Id.*

{¶ 20} Similar to our opinion in *Hunter*, the trial court did not deprive RC of a

meaningful opportunity to respond to the federal preemption issue. *See Revlock v. Lin*, 8th Dist. Cuyahoga No. 99243, 2013-Ohio-2544, ¶ 12 (finding party was not deprived of a meaningful opportunity to respond where party briefed the rescue doctrine and the trial court granted summary judgment on an exception to the rescue doctrine); *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. Franklin No. 07AP-696, 2008-Ohio-1421, ¶ 23 (finding plaintiff must have been on notice his own fault was at issue where defendant raised assumption of risk defense). Contrary to RC's claim otherwise, the trial court's grant of summary judgment based on express preemption versus implied preemption does not demonstrate RC did not have sufficient notice of the issue of possible federal preemption applicable to the facts of this case. Rather, RC briefed the matter regarding applicability of the Carmack Amendment, which as discussed above, is so interrelated to the ICCTA that one would not likely consider preemption under one, but not the other. Thus, the trial court's declining to reach a decision on the applicability of the Carmack Amendment to brokers, in favor of correctly applying the express preemption section of the statute, does not constitute reversible error.

{¶ 21} Accordingly, RC's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEE ON THE COMPLAINT.

{¶ 24} RC contends the trial court erred by granting summary judgment in favor of TQL because RC presented sufficient evidence to demonstrate a genuine issue of material fact existed for TQL's breach of contract claim. Specifically, RC contends there are three triable issues of fact in dispute: (1) whether TQL committed a breach in its role as a broker, (2) if yes, was it a material breach, and (3) whether such breach discharged RC's duty to perform relative to the 13 other brokered shipments.

{¶ 25} As discussed above, the moving party bears the initial burden of showing there

is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. *Id.* The nonmoving party may not rest upon the mere allegations of its pleadings, but must set forth evidence of specific facts showing the existence of a genuine triable issue. *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

**{¶ 26}** In support of its motion for summary judgment, TQL submitted the affidavit of Marc Bostwick, an operations manager for TQL, who averred that "[b]etween April 2, 2013 and July 5, 2013, TQL brokered transportation for 13 loads for [RC], aside from the [stolen] load * * * at issue in this case." Bostwick further averred RC had yet to pay the $53,402, plus interest, owed for those 13 loads. TQL further supported its motion with the credit application, including the terms and conditions for the 13 loads, as well as RC's statement of accounts demonstrating $53,402 due for unpaid shipments. The only evidence submitted by RC in opposition to TQL's motion for summary judgment was the affidavit of Eithel Yocupicio, traffic manager for RC, who averred to the procedure related to contracting for the stolen shipment. Yocupicio's affidavit does not provide any evidence to rebut the evidence related to TQL's breach of contract claim, but rather, supports RC's counterclaims. Therefore, the trial court properly found RC failed to meet its burden to demonstrate the existence of a genuine issue of material fact with respect to TQL's breach of contract claim, and TQL is entitled to judgment as a matter of law.

**{¶ 27}** Accordingly, RC's second assignment of error is overruled.

**{¶ 28}** Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.