[Cite as *Total Quality Logistics, L.L.C. v. Balance Transp., L.L.C.*, 2020-Ohio-620.]

# IN THE COURT OF APPEALS

## TWELFTH APPELLATE DISTRICT OF OHIO

## CLERMONT COUNTY

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | |
| Appellant, | : | CASE NO. CA2019-04-035 |
| | : | O P I N I O N |
| - vs - | | 2/24/2020 |
| | : | |
| BALANCE TRANSPORTATION, LLC, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017CVH000970

Calfee, Halter & Griswold LLP, David T. Bules, Alexandra R. Forkosh, 2800 First Financial Center, 255 East Fifth Street, Cincinnati, Ohio 45202, for appellant

Faulkner & Tepe LLP, John C. Scott, Tracy E. Schwetschenau, One West Fourth Street, Suite 2050, Cincinnati, Ohio 45202 and Tressler LLP, Joanna Maxwell, 6100 Center Drive, Suite 1175, Los Angeles, California 90045, for appellee

**RINGLAND, J.**

{¶ 1} Appellant, Total Quality Logistics, LLC ("TQL"), appeals a decision of the Clermont County Court of Common Pleas, denying its motion for summary judgment and granting summary judgment in favor of appellee, Balance Transportation, LLC ("Balance"). For the reasons detailed below, we affirm the trial court's decision.

{¶ 2} TQL is a freight broker. As such, TQL's customers pay TQL for arranging the transportation of their products with a carrier, and TQL then pays the carrier to transport the product. Balance is a carrier that transports such products. In August 2009, TQL and Balance entered into a broker-carrier agreement ("Agreement") that provided terms for the transportation of TQL's customers.

{¶ 3} In June 2016, in accordance with the Agreement, TQL arranged with Balance to deliver one truckload of granite for its customer C&C North America, Inc. ("C&C") from La Porte, Texas to Sun City Granite ("Sun City") in El Paso, Texas. TQL issued a rate confirmation for the load, which Balance accepted, thus confirming its agreement to transport the load. There is no dispute that Balance took possession of the granite in good condition.

{¶ 4} On June 17, 2016, Balance's driver, Adrian Bernal, arrived at Sun City. When he arrived, Bernal parked his truck on the street in front of Sun City's building and went inside. There, Bernal met Sun City's representative. Bernal presented the bill of lading to Sun City's representative who signed, dated, and returned the bill of lading to Bernal. Bernal then sent an electronic copy of the bill of lading to Balance. The Sun City representative then instructed Bernal to move his truck forward a short distance from where he had parked and that "they were going to unload me."

{¶ 5} Bernal returned to his truck, moved it forward a few feet as instructed, and then placed the truck in park. When he exited the vehicle, Bernal unstrapped the load from the flatbed trailer and placed the straps back inside his truck. Bernal then watched as the Sun City employees began unloading the granite.

{¶ 6} At some point, Bernal reentered his truck's cabin. Bernal remained there for a few minutes until he heard a loud noise. When he stepped out of the cab, Bernal saw that the slabs of granite located in the front of the trailer were falling off the truck, which, in turn, caused slabs toward the rear of the trailer to begin falling too. While this was occurring,

- 2 -

Bernal testified that he observed a forklift, being used by a Sun City employee, backing away from his trailer holding an unbroken slab of granite.

{¶ 7} After the incident, the Sun City representative who signed the bill of lading asked Bernal to return the bill to her. Bernal testified that the Sun City representative attempted to alter the bill of lading that she had already signed. After the Sun City representative made the changes to the bill of lading, Bernal made a written statement on the bill of lading. The Sun City representative then wrote her own statement below Bernal's.

{¶ 8} Following these events, TQL claimed that Balance breached the Agreement by failing to properly deliver the cargo or refusing to pay TQL. Specifically, TQL alleged that Balance failed to timely and properly deliver the load of granite slabs to the intended destination in good condition as required by the Agreement.

{¶ 9} C&C submitted a cargo claim to TQL for the cost of its damaged cargo in the amount of $30,641.11. TQL paid that amount to C&C and, in exchange, C&C released and assigned its claim against Balance to TQL. Under an offset provision in the Agreement, TQL applied an open invoice of $1,900 owed to Balance as partial payment, thus reducing TQL's claim to $28,741.11.

{¶ 10} On August 7, 2017, TQL filed a complaint seeking $28,741.11 for recovery under the Carmack Amendment, breach of contract, and breach of bailment duty. Balance filed a counterclaim seeking recovery of the $1,900 open invoice, alleging TQL misappropriated said funds for the claimed loss. Both parties moved for summary judgment. In a final judgment entry dated April 1, 2019, the trial court denied TQL's motion for summary judgment and granted summary judgment to Balance. TQL now appeals, raising three assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO

APPLY THE EXPRESS LANGUAGE OF THE AGREEMENT (PARAGRAPH 8), WHICH REQUIRES DELIVERY OF THE SHIPMENT TO THE CONSIGNEE BEFORE THE CARRIER'S CARGO CLAIM LIABILITY ENDS.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO APPLY THE PROVISION IN PARAGRAPH 8 OF THE AGREEMENT STATING THAT ALL LIABILITY STANDARDS AND BURDENS OF PROOF SHALL BE GOVERNED BY THE CARMACK AMENDMENT.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE TRIAL COURT ERRED BY FAILING TO PROPERLY CONSIDER ALL EVIDENCE OF DELIVERY FAILURE WHEN GRANTING BALANCE TRANSPORTATION'S MOTION FOR SUMMARY JUDGMENT AND DENYING TQL'S MOTION FOR SUMMARY JUDGMENT ON ALL OF TQL'S CLAIMS.

{¶ 17} TQL's assignments of error are interrelated and will be addressed together. TQL argues the trial court erred by denying its motion for summary judgment and instead granting summary judgment to Balance. In so doing, TQL argues it is entitled damages under three theories of liability: (1) a cargo damage claim under the Carmack Amendment, (2) a breach of contract claim pursuant to the terms of the Agreement, and (3) breach of bailment duties.

{¶ 18} This court reviews summary judgment decisions de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law and, (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the

nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 369-70 (1998).

{¶ 19} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶ 20} Pursuant to well-established principles of transportation law, cargo damage claims against interstate motor carriers are determined under the Carmack Amendment. *Total Quality Logistics, L.L.C. v. Red Chamber Co.*, 12th Dist. Clermont No. CA2016-09-062, 2017-Ohio-4369, ¶ 11. The Carmack Amendment provides that:

> [a] carrier providing transportation or service * * * shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service * * * are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States * * *.

*Id.*, citing 49 U.S.C. 14706(a)(1). Accordingly, the Carmack Amendment creates a federal statutory remedy on a bill of lading against both the originating and destination carrier. *Id.* To assert a prima facie case pursuant to the Carmack Amendment, one must demonstrate: (1) delivery to the carrier in good condition, (2) delivery failure or arrival in damaged condition, and (3) the amount of damages caused by the loss. *Id.*, citing *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 274 (1st Cir.2000).

{¶ 21} In addition to claims under the Carmack Amendment, TQL also raises a breach

of contract claim against Balance pursuant to the terms under the Agreement. Pursuant to Paragraph 8 of the Agreement:

> Unless otherwise agreed in writing, CARRIER shall become fully responsible/liable for the freight when it takes/receives possession thereof, and the trailer(s) is loaded, regardless of whether a bill of lading has been issued, and/or signed, and/or delivered to CARRIER, and which responsibility/liability shall continue until delivery of the shipment to the consignee and the consignee signs the bill of lading or delivery receipt.

TQL claims that Paragraph 8 mandates two conditions before the carrier's liability ends: (1) delivery of the shipment to the consignee, and (2) consignee's signature on a bill of lading or delivery receipt.

{¶ 22} Finally, TQL also claimed Balance breached its bailment duties. The general and accepted rule in bailment cases is that the bailee has two basic duties to the bailor: (1) he must exercise ordinary care in safeguarding the bailed property; and (2) he must return the bailed property, or the product thereof, undamaged. If the bailee fails to redeliver the bailed property, he has breached both of these duties and is liable to the bailor, in tort and contract, for the value of the property. In order to establish a prima facie case, the bailor must prove: (1) the existence of a bailment contract; (2) the delivery of the bailed property to the bailee; and (3) the failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 831 (2d Dist.1993)

{¶ 23} Following review, we find the undisputed evidence supports the finding that Balance successfully delivered the cargo and Sun City signed the bill of lading prior to any damage to the cargo. Thus, the loss of cargo occurred after the risk of loss had shifted from Balance. This finding is dispositive as to all claims raised by TQL.

{¶ 24} On appeal, TQL cleverly dissects the trial court's decision to argue that the trial court ignored the "delivery" requirement and instead placed undue emphasis on the signed

bill of lading. TQL maintains that, although Sun City's representative signed the bill of lading, Balance had not yet successfully delivered the cargo. In so doing, TQL denies that delivery was complete when Bernal parked his truck in the street or when the bill of lading was signed. TQL also alleges that delivery could not have been complete at the signing of the bill of lading because Bernal still had to move the truck, repark the truck, and unstrap the granite.

{¶ 25} However, contrary to TQL's argument, we do not find the trial court merged or eliminated the delivery requirement. Though the parties present argument as to the precise moment that delivery occurred, the operative facts are straightforward and not in dispute. As noted above, Bernal accepted and transported the cargo from its original destination to Sun City. Since there was no place to park his truck, Bernal testified that he parked in the street near the sidewalk and went into the office where a Sun City representative signed and dated the bill of lading and gave it back to him. Bernal then sent a copy of the bill of lading to Balance. The Sun City representative then instructed Bernal to move his truck forward a short distance and Bernal understood that "they were going to unload me." In accordance with the instructions, Bernal testified that he moved his truck up a few feet and parked the truck. Thereafter, Bernal stated that he unstrapped the load from the flatbed trailer and placed the straps inside the truck's cabin. Up until this point, there is no dispute that the cargo was in good condition.

{¶ 26} Soon thereafter, Sun City began unloading the granite from the truck. Ultimately, the granite was badly damaged during the unloading process. However, since the damage occurred subsequent to delivery and receipt of the signed bill of lading, we agree with the trial court that Balance was no longer responsible for the risk of loss in accordance with the Carmack Amendment and the parties' contractual and bailment obligations. As a result, we find the trial court appropriately granted summary judgment in favor of Balance.

{¶ 27} Finally, we note that TQL argues that its claim for breach of bailment duty must be reversed because Balance allegedly did not move for summary judgment or present argument of evidence on that claim. This court has previously stated, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Total Quality Logistics*, 2017-Ohio-4369 at ¶ 9; *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, 12th Dist. Clermont No. CA2018-05-034, 2019-Ohio-20, ¶ 25. "A trial court, generally, may not sua sponte grant summary judgment upon grounds not raised by the prevailing party." *Id.* However, a trial court does not deprive a party of a meaningful opportunity to respond where the party has notice of an issue. *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. Franklin No. 07AP-696, 2008-Ohio-1421, ¶ 22.

{¶ 28} TQL's claim that Balance did not move for summary judgment on the bailment claim is contradicted by the record. Balance's motion clearly states that it sought summary judgment on all claims including specific reference to the breach of bailment duties that TQL complains of on appeal. Furthermore, since Balance argued that it had successfully delivered the cargo and had a signed bill of lading, TQL was on notice that its claim for breach of bailment duty was at issue. As a result, we find TQL's three assignments of error are without merit and are hereby overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.