[Cite as *Total Quality Logistics, L.L.C. v. All Pro Logistics, L.L.C.*, 2024-Ohio-772.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

TOTAL QUALITY LOGISTICS, LLC,      :

      Appellant and Cross-Appellee,      :       CASE NOS. CA2022-11-078
                                              CA2022-12-082

                                           :

- vs -                                          O P I N I O N
                                           :              3/4/2024

ALL PRO LOGISTICS, LLC,       :

      Appellee and Cross-Appellant.      :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020-CVH-00537

Bricker Graydon LLP, and Jeffrey P. McSherry, for appellant/cross-appellee.

Schroeder, Maundrell, Barbiere & Powers, and Katherine L. Barbiere and James J. Barbiere, for appellee/cross-appellant.

**PIPER, J.**

{¶ 1} Appellant, Total Quality Logistics, L.L.C. ("TQL"), timely appeals the decision of the Clermont County Court of Common Pleas which dismissed with prejudice multiple claims while granting summary judgment in favor of TQL on one claim. TQL asserts the dismissal of its claims with prejudice was done without any notice from the trial court or motion filed by appellee, All Pro Logistics, L.L.C ("All Pro"). The trial court

also granted summary judgment in favor of TQL regarding a counterclaim filed by All Pro. All Pro cross-appeals claiming the trial court erred in granting summary judgment to TQL as there were genuine issues of material fact that required presentation to a jury.

## I. Facts and Procedure

**{¶ 2}** TQL is a third-party logistics company, operating in the freight brokerage industry. All Pro is an independent third-party motor carrier. In November 2019, TQL arranged for All Pro to transport a load of blueberries from New Jersey to Michigan on behalf of TQL's client, Andes River Marketing Services ("Andes River"). The terms of delivery were set forth in a broker-carrier agreement.

**{¶ 3}** All Pro picked up the blueberries in New Jersey and signed the bill of lading for the load. The rate confirmation and the bill of lading provided the blueberries were to be refrigerated at 34 degrees Fahrenheit.

**{¶ 4}** The blueberries were delivered by All Pro's driver to a Kroger facility in Michigan, however, they were rejected for being frozen and in damaged condition. A portable temperature device known as a "temp tale" showed that the temperature in the trailer was below freezing and a separate electronic "reefer download" confirmed that the blueberries were exposed to below freezing temperatures. Upon being notified the load had been rejected, TQL directed All Pro to transport the blueberries to a third-party for possible salvage. TQL reimbursed its client, Andes River, $100,000 for the product loss.[1] As consideration for TQL covering the loss, Andes River provided TQL with a release and assignment of its claims against All Pro.

---

1. The initial damage claim was actually for $140,184. However, the damage amount was reduced because Andes River failed to inform TQL that the value of the blueberries exceeded $100,000 as was required at the time Andes River contracted with TQL to procure a carrier.

{¶ 5}   TQL received $12,098.64 in salvage value for the blueberries which offset a portion of the damages.  Pursuant to the terms of the broker-carrier agreement, TQL also credited a portion of the damages in the amount of $29,009.98 which was an amount TQL owed All Pro for open invoices.

{¶ 6}   In June 2020, TQL filed suit against All Pro.  TQL asserted claims for breach of contract (Count 1), unjust enrichment (Count 2), and promissory estoppel (Count 3).  TQL also asserted an additional six claims arising from the assignment it received from Andes River. Those claims were for cargo loss under the Carmack Amendment (Count 4), breach of bailment (Count 5), breach of contract (Count 6), promissory estoppel (Count 7), unjust enrichment (Count 8), and an alternative unjust enrichment claim (Count 9).

{¶ 7}   All Pro did not answer the complaint and a default judgment was issued in favor of TQL in the amount of $58,891.38 on August 28, 2020.  With the default judgment, TQL was able to garnish funds from All Pro in the amount of $30,920.73.

{¶ 8}   On March 11, 2021, All Pro sought relief from default judgment claiming it was never served with a copy of the complaint and was unaware of the litigation until February 2021.  The trial court granted All Pro's motion for relief and vacated the default judgment.  All Pro then filed an answer, which it later amended to include a counterclaim. All Pro's counterclaim sought recoupment of the funds seized by the previous garnishment.

{¶ 9}   On June 15, 2022, TQL filed a motion for summary judgment on its Carmack Amendment claim (Count 4), its breach of contract claim under the broker-carrier agreement (Count 1), and All Pro's counterclaim.  All Pro filed a memorandum in opposition to TQL's motion for summary judgment.  All Pro did not move for summary

judgment or request dismissal of any claims.

{¶ 10} On October 25, 2022, the trial court granted summary judgment in favor of TQL on its Carmack Amendment claim (Count 4) and on All Pro's counterclaim. It denied summary judgment on TQL's motion for summary judgment as to its breach of contract claim (Count 1). In doing so the trial court stated that "the MSJ as to counts 1, 2, 3, 5, 6, 7, 8, and 9 is denied and these counts are dismissed with prejudice." On Count 4 the trial court awarded TQL the amount of $27,970.65.

{¶ 11} On November 21, 2022, TQL filed a Civ.R. 60(B) motion for relief from judgment. On November 23, 2022, TQL filed its notice of appeal. TQL then filed a motion with this court to remand the matter to the trial court for consideration of TQL's pending Civ.R. 60(B) motion, which this court granted. On February 22, 2023, the trial court denied TQL's Civ.R. 60(B) motion. We now consider TQL's appeal, raising two assignments of error for review and All Pro's cross-appeal, raising one cross-assignment of error for review.

## II. TQL's Appeal

{¶ 12} TQL's Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED BY *SUA SPONTE* DISMISSING, WITH PREJUDICE, TQL'S BREACH OF CONTRACT AND OTHER CLAIMS EVEN THOUGH [ALL PRO] NEVER FILED A CIV.R. 12 MOTION, A CIV.R. 56 MOTION, OR ANY OTHER MOTION SEEKING DISMISSAL, AND WITHOUT THE TRIAL COURT GIVING TQL PRIOR NOTICE THAT IT MAY DISMISS SOME OR ALL OF TQL'S CLAIMS AND AN OPPORTUNITY TO RESPOND.

{¶ 14} TQL's first assignment of error relates to the trial court's dismissal of Counts 1, 2, 3, 5, 6, 7, 8, and 9. As noted, in the proceedings below, TQL moved for summary

judgment on Count 1, Count 4, and All Pro's counterclaim.[2]  While All Pro filed a memorandum in opposition to summary judgment, it did not file a motion for summary judgment or a motion to dismiss any of TQL's claims.

## A. Applicable Law

{¶ 15} "In general, a court may dismiss a complaint on its own motion pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted, only after the parties are given notice of the court's intention to dismiss and an opportunity to respond." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 161 (1995).  However, a court may sua sponte dismiss a complaint without such notice where the complaint is frivolous or where it is obvious the claimant cannot prevail on the facts alleged in the complaint.  *Ebbing v. Stewart*, 12th Dist. Butler No. CA2016-05-085, 2016-Ohio-7645, ¶ 27, citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 108 (1995).

{¶ 16} The rule is similar with regard to summary judgment in that Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party.  *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 15.  An exception exists when "an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law." *State ex rel. J.J. Detweiler Enterprises, Inc. v. Warner*, 103 Ohio St.3d 99, 2004-Ohio-4659, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986).

---

2. Because the trial court found TQL was entitled to damages under the Carmack Amendment, the trial court ruled that All Pro's counterclaim for recoupment of money was without merit.  The $30,920.73 TQL had previously garnished was applied to the total judgment amount.

{¶ 17} In *State ex rel. Ames v. Freedom Twp. Bd. of Trustees*, 11th Dist. Portage No. 2022-P-0005, 2023-Ohio-343, a complaint was filed against a board of trustees alleging five violations of the Open Meetings Act. Like the instant matter, the relator filed a motion for summary judgment while the respondent did not seek either summary judgment or dismissal. The trial court rendered summary judgment in favor of relator on Counts 1, 2, and 3. However, the trial court "dismissed" Counts 4 and 5. In reversing the trial court's decision, the Eleventh District stated:

> It is unclear whether the trial court dismissed Counts 4 and 5 pursuant to a Civ.R. 12(B) standard of dismissal or granted summary judgment in favor of the Board under the Civ.R. 56 summary judgment standard. In either case, the Board did not file either a motion to dismiss or a motion for summary judgment.
>
> Although there is a narrow exception by which the trial court can enter summary judgment in favor of the non-moving party, that exception requires that "all relevant evidence" is before the court. On this record, we cannot be satisfied that all relevant evidence was indeed before the trial court. This is particularly true where the moving party may strategically choose not to put forth all evidence available where there is no cross-motion for summary judgment. Nothing in this decision precludes the Board from filing a motion to dismiss or motion for summary judgment on remand.

*Id.* at ¶ 36-37. The reasoning in *Ames* is relevant to the analysis before us.

## B. Trial Court's Decision

{¶ 18} The trial court found that both the broker-carrier agreement and the written assignment of rights were valid and enforceable contracts. The trial court then separately analyzed the Carmack Amendment claim (Count 4) and the breach of contract claim (Count 1).

### 1. Carmack Amendment claim (Count 4)

{¶ 19} We will analyze the merits of the trial court's ruling on the Carmack

Amendment claim (Count 4) in more detail with regard to All Pro's cross-assignment of error. However, to summarize, the trial court considered the summary judgment evidence presented by TQL and determined that TQL presented sufficient evidence to support a prima facie case under the Carmack Amendment. That is, the evidence showed the cargo was delivered to the carrier in good condition, the carrier delivered the cargo in a damaged condition, and there were monetary damages caused by delivery of the damaged cargo. *Total Quality Logistics, L.L.C. v. Red Chamber Co.*, 12th Dist. Clermont No. CA2016-09-062, 2017-Ohio-4369 ¶ 11. The trial court determined that Andes River had the right to initiate the Carmack Amendment claim against All Pro and Andes River assigned that right to TQL, who then "stepped into the shoes of Andes" River.

{¶ 20} The trial court then considered the summary judgment evidence presented by All Pro and determined that All Pro failed to meet its reciprocal burden in showing a genuine issue of material fact. The trial court concluded that "TQL, in its assignee status, has established that no genuine issue of material fact remains to be litigated as to the three requirements of its Carmack Amendment claim in [Count 4] and is entitled to judgment on this count as a matter of law."

## 2. Breach of contract claim (Count 1)

{¶ 21} After concluding that TQL was entitled to summary judgment on the Carmack Amendment claim (Count 4), the trial court discussed the breach of contract claim (Count 1). The trial court stated there was no dispute that the broker-carrier agreement was in effect at all times pertinent to the present action, noting that the agreement afforded TQL a number of remedies against All Pro in the event All Pro breached the agreement. The trial court, however, discussed only a single provision of the agreement, that being paragraph 8, which stated:

Unless otherwise agreed upon in writing, CARRIER is fully responsible and liable for the freight once it takes/receives possession of it, and the trailer(s) is loaded, even partially, regardless of whether a bill of lading has been issued, signed, and/or delivered to CARRIER. CARRIER's responsibility/ liability shall continue until proper and timely delivery of the shipment to the consignee and the consignee signs the bill of lading or delivery receipt evidencing a proper delivery.

**{¶ 22}** The trial court stated that the above-referenced provision "simply provides that when TQL arranges for a carrier, such as [All Pro], to transport any freight for one of its customers, the carrier is responsible for the freight from the moment it takes custody of it until the consignee accepts delivery by signing the bill of lading." Continuing, the trial court stated "[i]t says nothing to the effect that TQL is entitled to recover any form of damages from [All Pro] when a consignee rejects the freight and does not sign the bill of lading."

**{¶ 23}** The trial court concluded that TQL was only permitted to assert claims that Andes River could have asserted against All Pro under the Carmack Amendment. In reaching this decision, the trial court did not discuss any other provision of the contract.

### C. Analysis

**{¶ 24}** Following review, we sustain TQL's first assignment of error. It is unclear why the trial court determined that TQL's claims were so limited, however, we note the trial court's decision was issued just before this court issued *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, 12th Dist. Clermont No. CA2022-02-005, 2022-Ohio-3969.

**{¶ 25}** In *JK & R Express*, we held that a broker-carrier agreement superseded the common law regarding TQL's right to indemnification from a carrier for monies it paid a customer for cargo loss. *JK & R Express* at ¶ 35-37; *Godoy v. Total Quality Logistics,*

*L.L.C.*, 12th Dist. Clermont No. CA2022-01-003, 2023-Ohio-4585.[3]   In both *JK & R Express* and *Godoy*, we considered the express language contained in the agreements. We concluded that TQL was entitled to indemnification based upon terms expressly contained in the broker-carrier agreements.  *JK & R Express* at ¶ 28-37; *Godoy* at ¶ 41-51.  We noted in *JK & R Express* that the broker-carrier agreement must be read in context of the entire agreement.  *Id.* at ¶ 36.  Therein, we found the "broker-carrier agreement, considered as a whole, is intended to make TQL the single point of contact for its contracted carriers and responsible for the complete administration of the shipment, including resolving cargo claims without involvement of the shipper or customer."  *Id*.

{¶ 26} In the present case, TQL presented a copy of the broker-carrier agreement, which contains multiple provisions regarding indemnification and responsibility for cargo loss similar to those discussed in *JK & R Express* and *Godoy*.  However, the trial court only discussed the one paragraph that it found "most relevant" when it determined that TQL's claims were limited.  Whether the express terms of the contract entitle TQL to relief, as we held in *JK & R Express* and *Godoy*, is not properly before us, as procedurally, we find the decision in *Ames* offers a compelling rationale for remand.

{¶ 27} As in *Ames*, it is unclear whether the trial court dismissed Counts 1, 2, 3, 5, 6, 7, 8, and 9 pursuant to a Civ.R. 12(B) standard of dismissal or granted summary judgment in favor of All Pro under the Civ.R. 56 summary judgment standard.  The decision to dismiss the claims was not in response to a motion filed by All Pro, and TQL was not aware that its claims were being considered sua sponte for dismissal.  TQL

---

3. We note *JK & R Express* did not concern preemption under the Carmack Amendment and did not address whether a broker's claim for indemnification pursuant to a written contract was preempted by the Carmack Amendment.

convincingly asserts that had it been placed on notice that its other claims were being considered for dismissal it could have exercised various options prior to any dismissal.

**{¶ 28}** As noted above, there are instances in which a court may dismiss a complaint without providing parties notice and an opportunity to respond. However, that exception is limited to instances where the complaint is frivolous or where it is obvious the claimant cannot prevail on the facts alleged in the complaint. *Ebbing*, 2016-Ohio-7645 at ¶ 27. Similarly, summary judgment can be authorized in favor of a non-moving party only when it meets the exception that "an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law." *State ex rel. J.J. Detweiler Enterprises*, 2004-Ohio-4659 at ¶ 13.

**{¶ 29}** On this record, we are not satisfied that either exception was met. Indeed, the express terms of the agreement at issue in this case are similarly worded and, at times, identical, to the terms analyzed and discussed in *JK & R Express* and *Godoy*. Accordingly, upon review of the record, we conclude the trial court erred by sua sponte ordering the dismissal of Counts 1, 2, 3, 5, 6, 7, 8, and 9.[4] TQL's first assignment of error is sustained.

**{¶ 30}** TQL's Assignment of Error No. 2:

**{¶ 31}** THE TRIAL COURT ABUSED ITS DISCRETION IN ITS FEBRUARY 22, 2023 DECISION BY DENYING TQL'S CIV.R. 60(B) MOTION AS TO THE TRIAL

---

4. On remand, there may be some claims that are no longer applicable. For example, in cases where there is a valid, enforceable contract, the doctrine of unjust enrichment is not applicable. *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 38.

COURT'S OCTOBER 25, 2022 DECISION.

{¶ 32} In its second assignment of error, TQL argues the trial court erred by denying its Civ.R. 60 motion for relief from judgment. In light of our resolution of TQL's first assignment of error, TQL's second assignment of error is moot and need not be addressed. *See* App.R. 12(A)(1)(c); *Poteet v. MacMillan*, 12th Dist. Warren No. CA2021-08-071, 2022-Ohio-876.

### III. All Pro's Cross-Appeal

{¶ 33} All Pro's Cross-Assignment of Error:

{¶ 34} THE TRIAL COURT ERRED IN FINDING THAT TQL HAD AN ACTIONABLE CLAIM UNDER THE CARMACK AMENDMENT BY FINDING THAT THE BLUEBERRIES AT ISSUE IN THIS MATTER WERE DAMAGED BY [ALL PRO].

{¶ 35} In its cross-assignment of error, All Pro argues the trial court erred in granting summary judgment in favor of TQL on the Carmack Amendment claim (Count 4). This court reviews summary judgment decisions de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law and, (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Total Quality Logistics, L.L.C. v. Balance Transp., L.L.C.*, 12th Dist. Clermont No. CA2019-04-035, 2020-Ohio-620, ¶ 18.

{¶ 36} The Carmack Amendment creates a federal statutory remedy on a bill of lading. *Red Chamber Co.*, 2017-Ohio-4369 at ¶ 11. To assert a prima facie case pursuant to the Carmack Amendment, one must demonstrate (1) the cargo was in good

condition when delivered to the carrier, (2) a failure by the carrier to deliver the cargo undamaged, and (3) the amount of monetary damages caused by the loss. *Id.*, citing *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 274 (1st Cir.2000); *Balance Transp.* at ¶ 20.

{¶ 37} "A carrier will not be liable if it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; or (e) the inherent vice or nature of the goods." *Albert v. United Parcel Serv. of Am., Inc.*, 8th Dist. Cuyahoga No. 103163, 2016-Ohio-1541, ¶ 12, citing *Case W. Res. Univ. v. Yellow Freight Sys.*, 85 Ohio App.3d 6, 11 (8th Dist.1993).

{¶ 38} In support of its motion for summary judgment, TQL submitted the affidavit of Marc Bostwick, an operations manager for TQL, who averred that "[o]n November 11, 2019, the load of blueberries were [sic] picked up by [All Pro] and loaded onto [All Pro's] trailer in good condition in Vineland, New Jersey." The bill of lading was attached to the affidavit. Upon arrival at the Kroger facility, the blueberries were found to be damaged on account of freezing temperatures in the trailer. Bostwick averred that the blueberries were damaged and incorporated various exhibits showing the temperature of the trailer was not maintained at the required 34 degrees. Bostwick then averred to the monetary damage suffered as a result of the cargo loss. Thus, the evidence establishes a prima facie case pursuant to the Carmack Amendment claim.

{¶ 39} On appeal, All Pro asserts the same arguments that were rejected by the trial court. All Pro asserted that it was the standard practice of the freight transportation industry to hire the United States Department of Agriculture ("USDA") to inspect a rejected shipment at the location where they were rejected. However, All Pro offers no support for that proposition, either through case law, regulations, or industry publication. There

is certainly no requirement in the bill of lading, or in the agreement between All Pro and TQL that the USDA be contacted in the location, and at the moment, the load is rejected.

{¶ 40} All Pro further argues that TQL cannot establish the reefer cooling unit damaged the blueberries, noting the trailer was two months old at the time and cost $85,000 and there was "no reason to believe it would have malfunctioned." All Pro then argues that TQL could not prove its damages because TQL did not secure a USDA inspection until "17 hours after the delivery of the blueberries." However, arguments regarding the age and cost of the trailer are not genuine issues of material fact, nor are All Pro's arguments with regard to the timing and location of the USDA inspections. The evidence clearly established the cargo loss and the monetary damages incurred by TQL through the affidavit of Marc Bostwick.

{¶ 41} Finally, All Pro argues the trial court erred in rendering summary judgment to TQL because there was a genuine issue of material fact that Andes River caused the damages. In support, All Pro refers to the testimony of its driver who "believed" Andes River set the reefer cycle. A non-factual, unsupported belief is akin to speculation particularly from the same driver who also testified that she had no recollection of who set the temperature when she picked up the blueberries. Regardless, it is indisputable All Pro accepted the cargo in good condition and had the responsibility to deliver it in the same condition, which failed to occur.

{¶ 42} According to the bill of lading, the blueberries were in good condition when picked up. The blueberries were then damaged during transport. TQL also presented evidence regarding monetary damages. The trial court properly found TQL established the Carmack Amendment claim by virtue of the assignment of rights it received from Andes River. All Pro failed to produce summary judgment evidence to establish a genuine

issue of material fact.  Accordingly, we find the trial court did not err in rendering summary judgment in favor of TQL.  Therefore, All Pro's sole cross-assignment of error is overruled.

## IV. Conclusion

{¶ 43} Following review, we sustain TQL's first assignment of error, moot TQL's second assignment of error, and overrule All Pro's cross-assignment of error.  This cause is remanded for further proceedings.

{¶ 44} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J., and M. POWELL, J., concur.