[Cite as *DiPasquale v. DiPasquale*, 2016-Ohio-8457.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| LYN D. DiPASQUALE n.k.a. DOLL, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-04-024 |
| | : | O P I N I O N |
| - vs - | | 12/28/2016 |
| | : | |
| PETER M. DiPASQUALE, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 09DR33138


John D. Smith, 140 North Main Street, Suite B, Springboro, Ohio 45066, for plaintiff-appellee

Mitchell W. Allen, P.O. Box 227, Mason, Ohio 45040, for defendant-appellant


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Peter DiPasquale ("Husband"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying his request to terminate or reduce the amount of spousal and child support he pays plaintiff-appellee, Lyn DiPasquale n.k.a. Lyn Doll ("Wife").

{¶ 2} Husband and Wife were divorced in 2011, and had two minor children at the time. Husband was ordered to pay Wife $49,000 per year in spousal support, plus a

percentage of his bonuses, for 102 months, and $13,091.74 a year in child support. At the time the trial court first ordered Husband's support obligations, he earned $155,500 plus bonuses, and Wife earned $16,000 working for a family-owned business.

{¶ 3} Since that time, one of the parties' children has become emancipated and Husband retired from his employment at Procter & Gamble ("P&G"). Husband received one year of severance pay at the time he retired. Once the one-year period passed during which Husband's severance pay was equal to his regular earnings, Husband filed a motion to reduce child support based on his child's emancipation, and to reduce or terminate his spousal support based on his retirement.

{¶ 4} During a hearing on the matter, Husband argued that his retirement from P&G was not voluntary, and that he retired in lieu of being fired for poor performance. Husband, who worked in human resources, asserted that he had received multiple poor reviews, and that P&G's common practice was to terminate the employment of employees after successive poor reviews. Husband testified that he accepted P&G's offer of a voluntary separation package as an alternative to termination without any benefits.

{¶ 5} The magistrate issued a decision, finding that no change of circumstances had occurred warranting a reduction of spousal support. The magistrate also determined a new amount for child support given that one child was emancipated. Husband filed objections to the magistrate's decision regarding both spousal and child support, but did not provide the trial court with a transcript of the hearing. The trial court adopted the magistrate's decision in full, thus making it an order of the court. Husband now appeals the trial court's decision, raising the following assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO CHANGE IN CIRCUMSTANCES WITH RESPECT TO SPOUSAL SUPPORT.

{¶ 8} Husband argues in his first assignment of error that the trial court erred in determining that his retirement from P&G did not constitute a change of circumstances to warrant reduction or termination of spousal support.

{¶ 9} A trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award. *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 17. Thus, a spousal support award will not be disturbed on appeal absent an abuse of discretion. *Id.* An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 10} According to R.C. 3105.18(E), a trial court can modify spousal support if the court determines that the circumstances of either party have changed and the parties' divorce decree contained a provision specifically authorizing the court to modify the spousal support order. R.C. 3105.18(F)(1) provides that "a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances * * *." The statute further requires that the change in circumstances be "substantial and makes the existing award no longer reasonable and appropriate." R.C. 3105.18(F)(1)(a). The change in circumstances must have not been "taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was forseeable [sic]." *Id.*

{¶ 11} Before we address the trial court's decision, we first note that Husband failed to file a transcript with the trial court of the magistrate's hearing. As such, the trial court was, and this court is, limited in a review of the magistrate's decision.

{¶ 12} Civ.R. 53(D)(4)(d) provides that when ruling on timely filed objections, "the court shall undertake an independent review as to the objected matters to ascertain that the

magistrate has properly determined the factual issues and appropriately applied the law." An appellate court must presume that a trial court has performed an independent review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary. *Pietrantano v. Pietrantano*, 12th Dist. Warren No. CA2013-01-002, 2013-Ohio-4330, ¶ 14.

{¶ 13} Civ.R. 53(D)(3)(b)(iii) provides that an objection to a magistrate's factual finding, whether or not specifically designated as a finding of fact, must be supported by a transcript or affidavit of the evidence submitted to the magistrate.[1] It is well-established that when an objecting party fails to file a transcript with the objections, the court is "free to adopt the magistrate's findings without further consideration of the objections." *Stevens v. Stevens*, 12th Dist. Warren Nos. CA2009-02-028 and CA2009-06-073, 2010-Ohio-1104, ¶ 23. In such circumstances, the trial court is limited to examining only the magistrate's conclusions of law and recommendations and has the discretion to adopt the factual findings of the magistrate. *Bartlett v. Sobetsky*, 12th Dist. Clermont No. CA2007-07-085, 2008-Ohio-4432, ¶ 9.

{¶ 14} In addition, although transcripts of the proceedings are included in the record on appeal, as an appellate court, we are precluded from considering evidence that was not before the trial court during its independent review. *Finkelman v. Davis*, 12th Dist. Butler No. CA2003-07-173, 2004-Ohio-3909, ¶ 6. An appellate court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. *Stevens* at ¶ 24. Consequently, because Husband failed to file transcripts of the proceedings below, he is precluded from challenging on appeal the trial

---

1. Husband argues that his assignments of error are strictly issues of law, not of fact, so that a lack of a transcript was inconsequential to his objections and to his arguments on appeal. However, whether a person is voluntarily unemployed and whether to impute income for purposes of child support involve issues of fact. *See Cooper v. Cooper*, 12th Dist. Clermont No. CA2003-05-038, 2004-Ohio-1368, ¶ 17 ("Whether a parent is voluntarily unemployed is a question of fact for the trial court"); and *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993) ("the question whether a parent is voluntarily underemployed within the meaning of R.C. 3113.215[A][5], and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case").

court's adoption of the magistrate's factual findings regarding his retirement from P&G.

{¶ 15} The magistrate determined that Husband's circumstances based upon an involuntary decrease in salary did not occur because Husband's retirement was voluntary. The magistrate further determined that Husband's circumstances, even with retirement, had not otherwise changed to warrant a reduction or termination of his spousal support.

{¶ 16} Regarding the voluntary nature of Husband's retirement, the magistrate indicated that Father executed a voluntary separation package as an alternative to his being terminated for poor performance. The terms of the separation agreement provided Husband with one year of pay equal to his base salary of $155,500. While the magistrate considered that Husband received multiple poor performance reviews, the magistrate determined that Husband did not make any attempt to improve his performance or to otherwise negotiate continued employment with P&G despite the poor performance. While a voluntary retirement does not outright bar consideration of a party's decrease in income when determining if there was a substantial change of circumstances, the magistrate did not stop its analysis at whether Husband's retirement was voluntary. *Robinson v. Robinson*, 12th Dist. Brown Nos. CA93-02-027 and CA93-03-047, 1994 WL 110197, *1; *Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 23.

{¶ 17} Instead, the magistrate determined that even if Husband's retirement was involuntary, Husband chose to remain voluntarily unemployed. The magistrate addressed Husband's retirement agreement, and that it provided Husband with "extensive free outplacement services, and reimbursement of up to $5,000 for any education or job-training [Husband] chose to pursue." While the agreement also included a noncompete clause, the magistrate noted that Husband had a right to seek a release from P&G from the non-compete clause according to the terms of the separation agreement. However, and despite the agreement providing additional resources to assist Husband in becoming re-employed,

the magistrate found that Husband "did not avail himself" of the outplacement services or additional education/job training.

{¶ 18} The magistrate also found that Husband, who was 60 years old at the time of the hearing, did not have physical or mental disabilities that would prevent him from seeking employment. However, Husband neither sought employment after his retirement, nor did he "plan to look for a job" despite being in good mental and physical heath, and having "lengthy experience with a renowned global corporation." Despite Husband's plans to stay unemployed, the magistrate found that Husband did not make any strides to lower his budget. Instead, Husband continues to live in his mortgaged home, valued at $1,300,000, and his expenses reach $10,000 per month.

{¶ 19} We agree with the trial court that the magistrate's findings support its decision that Husband's retirement was voluntary and that even if it were not, Husband remains voluntarily unemployed. Additionally, the magistrate further determined that regardless of, and aside from, Husband's voluntary retirement, Husband's financial circumstances had not changed to warrant a spousal support modification.

{¶ 20} The magistrate determined that Husband failed to show a change in circumstances given that Husband has access to income from his investments capable of producing an amount similar to his previous earnings from P&G. Specifically, the magistrate found that Husband's investment portfolio has a value of approximately $4,000,000 and that according to Husband's testimony, a "reasonable rate of return" on his investments would be approximately three to four percent. As such, the magistrate found that Husband has access to earnings equal to approximately $160,000 per year based on his portfolio without being employed in any capacity.

{¶ 21} Husband argues that the magistrate erred by considering investment income because he chooses to reinvest the interest income on a continual basis rather than

withdraw, or realize, that income. However, and according to R.C. 3105.18(C)(1)(a) & (b), when determining spousal support, the court is to consider "the income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed" during the division of property subsequent to a divorce, as well as the "relative *earning abilities* of the parties".[2] (Emphasis added.)

{¶ 22} Despite his choice to reinvest his interest income, Husband has undisputed income from his portfolio, and has an admitted earning ability of three to four percent on his $4,000,000 in assets.[3] Given that Husband will earn as much, or more than, what he earned while employed with P&G, the magistrate determined that no change of circumstances occurred to warrant a change in Husband's spousal support obligation. We find no abuse of discretion in the trial court's adoption of this finding, nor in the overall decision to deny Husband's motion to modify his spousal support obligation. As such, Husband's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE COURT ERRED IN FAILING TO CONSIDER MS. DOLL'S INVESTMENT INCOME FOR CHILD SUPPORT PURPOSES.

{¶ 25} Husband argues in his second assignment of error that the trial court erred in not imputing income to Wife for purposes of the child support calculation.

---

2. As pertinent to the second assignment of error, income for purposes of child support calculations for a voluntarily unemployed parent includes "the sum of the gross income of the parent and any *potential* income of the parent." (Emphasis added.) R.C. 3119.01(5)(b).

3. Husband also argues that the magistrate's decision equates to "double dipping" and is otherwise barred by res judicata because the trial court divided the interest-earning assets after the parties' divorce, but did not otherwise include the interest earnings in Husband's income calculations. After the divorce, Husband chose to purchase Wife's claim in stock options, which the trial court awarded as Wife's portion of the marital property. Thus, Husband paid Wife $1,000,000 for her share. However, the magistrate's decision is not a case of double dipping where the original divorce decree divided the assets, but did not include the interest income from those sources when determining what spousal and child support were proper. Since that time, however, Husband turned the required age and can now withdraw his principal and interest income without any penalty, and that interest income is properly considered when determining spousal support issues.

{¶ 26} The magistrate recalculated Husband's child support obligation given the emancipation of one of his children, but in doing so, did not impute additional income to Wife. As previously stated, the magistrate considered Husband's income potential for purposes of establishing spousal and child support, and set his income at $155,500 for child support calculation purposes.

{¶ 27} Regarding Wife's salary, the magistrate determined that Wife's salary had increased from $16,000 at the time of the divorce to $26,520 working in a business she and her sister own and operate. However, the trial court did not find that Wife was voluntarily under or unemployed, which is a predicate to income imputation. *See* R.C. 3119.01(C)(11); *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 13. Without a finding of involuntary under or unemployment, the magistrate could not have imputed income to Wife, and thus did not abuse its discretion in not imputing income to Wife.

{¶ 28} Moreover, the income Husband wants imputed to Wife is not yet reachable by Wife. Wife has retirement benefits of approximately $1,633,000, but cannot access the principal or interest on these assets without incurring a ten percent penalty. This prohibition is in place until 2017 when Wife reaches a certain age. As such, the magistrate determined that Mother's income was limited to the $26,520 she earns from the family business, but did not include any interest income given Wife's ineligibility to withdraw such without penalty.

{¶ 29} The magistrate made these findings after considering the factors set forth in R.C. 3119.01(C)(11) regarding Husband's potential income. The statute provides that potential income, upon a finding of voluntary unemployment or underemployment includes "imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:"

    (i)     The parent's prior employment experience;

    (ii)    The parent's education;

(iii)     The parent's physical and mental disabilities, if any;

(iv)     The availability of employment in the geographic area in which the parent resides;

(v)      The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi)     The parent's special skills and training;

(vii)    Whether there is evidence that the parent has the ability to earn the imputed income;

(viii)   The age and special needs of the child for whom child support is being calculated under this section;

(ix)     The parent's increased earning capacity because of experience;

(x)      The parent's decreased earning capacity because of a felony conviction;

(xi)     Any other relevant factor.

{¶ 30}   As previously stated, we find that the magistrate's determination that Husband was voluntarily unemployed was properly adopted by the trial court.  Based on the testimony and evidence before the magistrate, Husband's imputed income for purposes of child support calculations was $155,500, or the amount he was able to earn while employed with P&G. The magistrate's decision makes clear that it had made a determination that Husband was "voluntarily unemployed and imputes to him his prior earned income of $155,500." The trial court, however, never found Wife to be under or unemployed, and thus did not impute income to Wife based on possible income she could not yet access from her investments.

{¶ 31}   Given our limited review of the record, and our adherence to the magistrate's factual findings, we find that the trial court did not abuse its discretion in adopting the magistrate's determination of Wife's income for the purposes of child support.  The magistrate found that Wife could not access the principal of her retirement accounts, or the

interest income from these assets, until she reaches a certain age given the penalty associated with early withdrawal. Moreover, the magistrate found that both parties had income from stock options since the time of the divorce, but that Husband provided no evidence regarding whether income from the stock options was recurring, and thus, such income was not considered in *either party's* income calculation.

{¶ 32} Without a transcript of the proceedings, we are bound to accept the magistrate's findings, and agree with the trial court that the magistrate's decision supports its findings that Mother could not access her interest income prior to 2017. Husband, conversely, had reached the required age, and was permitted to and had unfettered access to his principal and interest income. As such, we find no abuse of discretion in the incomes imputed, or not imputed, to the parties for purposes of child support calculations. Husband's second assignment of error is therefore, overruled.

{¶ 33} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.