[Cite as *C&D Trading, Inc. v. Total Quality Logistics, L.L.C.*, 2020-Ohio-6905.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| C&D TRADING, INC. DBA TWYN FOOD CORPORATION, | : | |
| Appellant, | : | CASE NO. CA2020-05-026 |
| | : | O P I N I O N<br>12/28/2020 |
| - vs - | : | |
| | : | |
| TOTAL QUALITY LOGISTICS, LLC, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020-CVH-00240

Garvey Shearer Nordstrom, PSC, Jennifer K. Nordstrom, P. Christian Nordstrom, 2388 Grandview Drive, Fort Mitchell, Kentucky 41017, for appellant

Bricker & Eckler LLP, Jeffrey P. McSherry, 201 East Fifth Street, Suite 1110, Cincinnati, Ohio 45202, for appellee

**HENDRICKSON, P.J.**

{¶1} Plaintiff-appellant, C&D Trading, Inc. dba Twyn Food Corporation ("Trading"), appeals from the decision of the Clermont County Court of Common Pleas, which granted the motion to dismiss filed by defendant-appellee, Total Quality Logistics, LLC ("TQL"). For the reasons that follow, this court affirms in part and reverses in part and remands for further

proceedings.[1]

{¶2} Trading filed a complaint against TQL asserting claims of breach of contract and negligence, which contained the following factual allegations, and which for purposes of this appeal are presumed true. Trading is a company that resells various commodities, including grocery items; TQL is a company that provides freight brokerage and logistical services to companies that desire to ship products. In July 2018, Trading asked TQL to arrange transportation for several thousand cases of "I Can't Believe It's Not Butter" and "Country Crock" branded margarine owned by Trading and valued at $67,254. Trading needed the margarine shipped from a warehouse in Miami, Florida to two Kroger grocery stores located approximately 1,300 miles away in Texas.

{¶3} TQL thereafter arranged for Fisher Trucking, LLC ("Fisher") to transport the margarine. A Fisher truck driver picked up the margarine at the Miami warehouse with a refrigerated trailer and signed a straight bill of lading, by which the driver acknowledged receipt of the perishable margarine in "good order." The driver then transported the margarine to the first of the Kroger locations, where Kroger rejected it for being too warm at 55 degrees Fahrenheit.

{¶4} Afterwards, TQL indicated to Trading that its claims team was working with Fisher's insurance carrier on making a claim for the loss and also offered to assist in salvaging the rejected margarine. TQL ultimately was able to obtain a salvage value of $19,511.30, which amount was eventually paid to Trading. However, Fisher's insurance carrier denied the insurance claim based in part on Fisher's truck driver relaying to an insurance adjuster that the margarine had been "loaded hot" from an unrefrigerated dock prior to being loaded into Fisher's trailer.

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.

{¶5} Trading alleged that it and TQL had entered into a contract to "properly transport" its margarine and that TQL breached this contract by failing to hire a reliable and competent motor carrier. Trading alleged that TQL's breach resulted in damages of $47,742.70 (the value of the margarine minus the salvage value). In its negligence claim, Trading alleged that TQL violated a duty of care to "properly present" the insurance claim and obtain payment on that claim for Trading's benefit. In this regard, Trading alleged that Fisher's driver's statements to the insurance company were false, were known to be false to TQL, and that TQL failed to correct this issue and prevent the denial of the claim. Trading alleged that TQL's negligence caused it damages equaling the value of the damaged cargo, or $47,742.70.

{¶6} TQL moved to dismiss pursuant to Civ.R. 12(B)(6). Citing this court's decision in *Total Quality Logistics, L.L.C. v. Red Chamber Co.*, 12th Dist. Clermont No. CA2016-09-062, 2017-Ohio-4369 TQL argued that Trading's claims were preempted by federal laws and that Trading's exclusive remedy for damages to its cargo was through a cause of action against the motor carrier, Fisher, under the Carmack Amendment, 49 U.S.C. 14706(a). In opposition, Trading sought to distinguish *Red Chamber* on both legal and factual bases. Alternatively, Trading indicated that if the court accepted TQL's arguments then, because TQL "could be considered a carrier," that Trading should be permitted to amend its complaint to assert a Carmack Amendment claim against TQL.[2]

{¶7} The court granted TQL's motion to dismiss. The court found that Trading's attempt to distinguish *Red Chamber* lacked merit, that *Red Chamber* was controlling authority and that Trading's claims were preempted by federal law. The court also rejected

---

2. Trading made this request in its memorandum in opposition and did not separately move to amend its complaint.

Trading's request to amend its complaint, noting that TQL was not constructively claiming to be a motor carrier. Trading appeals, raising two assignments of error.

{¶8} Assignment of Error No. 1:

{¶9} THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE TOTAL QUALITY LOGISTICS, LLC'S MOTION TO DISMISS BASED ON THE CARMACK AMENDMENT BECAUSE TQL IS A BROKER NOT A CARRIER.[3]

{¶10} Trading argues that the common pleas court erroneously determined that its claims against TQL were preempted by federal law. Civ.R. 12(B)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. *Marchetti v. Blankenburg*, 12th Dist. Butler No. CA2010-09-232, 2011-Ohio-2212, ¶ 9. "In order to prevail on a Civ.R. 12(B)(6) motion, 'it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling relief.'" *Id.*, quoting *DeMell v. The Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 88505, 2007-Ohio-2924, ¶ 7. In ruling on a complaint pursuant to Civ.R. 12(B)(6), the trial court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "A trial court's order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) is subject to de novo review on appeal." *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 35 (12th Dist.). This court must independently review the complaint to determine the appropriateness of the trial court's dismissal. *Id.*

{¶11} The common pleas court dismissed Trading's complaint on the basis of this court's decision in *Red Chamber*. There, Red Chamber ("RC"), a seafood distributor,

---

3. Trading's assignment of error suggests that the common pleas court premised its decision to dismiss Trading's claims on the Carmack Amendment. As will be explained, the decision was not premised on the Carmack Amendment, and was instead premised on federal preemption under 49 U.S.C. 14501.

requested that TQL arrange for transport of a cargo load of shrimp from California to Florida. 2017-Ohio-4369 at ¶ 3. TQL retained a trucking company to transport the shrimp but the cargo load was stolen during transit and never recovered.

{¶12} Following the loss, RC failed to pay TQL's invoices for 13 other shipments of RC cargo. TQL then sued RC, alleging breach of contract for failure to pay for the brokered shipments and claimed damages of $53,402. RC counterclaimed, asserting a breach of contract claim, a negligence claim, and a negligent supervision and hiring claim, all with respect to the stolen cargo. RC alleged that its damages were the value of the lost cargo, or $186,450.

{¶13} TQL filed a third-party complaint against the trucking company alleging negligence and seeking indemnification with respect to RC's counterclaims. The trucking company's insurer then settled with RC for $100,000 and RC agreed to indemnify the trucking company for any claims by any other party for damages resulting from the loss. *Id.*

{¶14} TQL moved for summary judgment, arguing that RC's counterclaims against it with regard to the stolen cargo were preempted by federal law. *Id.* at ¶ 4. The trial court granted summary judgment in favor of TQL on RC's counterclaims, finding that 49 U.S.C. 14501(c)(1) preempted the counterclaims. *Id.*

{¶15} On appeal, this court reviewed two potential arguments for preemption, i.e., implied preemption under the Carmack Amendment, 49 U.S.C. 14706(a), and express preemption under 49 U.S.C. 14501(c)(1). This court noted that the Carmack Amendment governs all claims against motor carriers for damage to property during interstate shipment. *Id.* at ¶ 11. The Amendment was intended to be the exclusive cause of action for interstate shipping contract claims alleging loss or damage to property. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir.2003). The Carmack Amendment preempts any state common law or contractual claims against common carriers with regard to cargo loss. *Dean v. UPS*

*Legal Dept.*, 4th Dist. Athens No. 13CA21, 2014-Ohio-619, ¶ 8; *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir.1997). However, because the Carmack Amendment is only applicable to claims against carriers, whether its preemptive effect would extend to claims against freight brokers could only be by implication and is not a settled legal issue. *Red Chamber* at ¶ 15.

{¶16} This court then examined express preemption under 49 U.S.C. 14501(c)(1), which provides:

> a State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * or any motor private carrier, *broker*, or freight forwarder with respect to the transportation of property.[4]

{¶17} Citing various federal cases in support, this court agreed that 49 U.S.C. 14501(c)(1) *expressly* preempted RC's state law claims against TQL. *Id* at ¶ 16. Based upon this conclusion, this court found it unnecessary to determine whether RC's claims were also impliedly preempted under the Carmack Amendment. *Id.* at ¶ 15.

{¶18} Trading argues that the court erred in dismissing its breach of contract claim on the basis of preemption under 49 U.S.C. 14501(c)(1). Trading contends that the cases cited in *Red Chamber* for the proposition that RC's state law claims were preempted all involved preemption of state common law tort claims. Upon review, this court agrees that the preempted "state law claims" referred to in *Red Chamber* are causes of action that derive from this state's common law and do not entail contractual claims arising from private agreement.

{¶19} Federal courts have consistently concluded that while 49 U.S.C. 14501 has

---

4. The phrase "other provision having the force and effect of law" has been interpreted by the United States Supreme Court to include state common law claims. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-283, 134 S. Ct. 1422 (2014) (construing identical language in the Airline Deregulation Act).

- 6 -

broad preemptive effect, this effect does not extend to breach of contract claims. *Total Quality Logistics, LLC v. Lith Transport, Inc.* S.D. Ohio No. 1:16-cv-00789, 2016 WL 5476148, at *3 (Sept. 29, 2016) (holding that the broad preemption of 49 U.S.C. 14501[c][1] "does not extend to ordinary breach of contract claims"); *Nature's One, Inc. v. Spring Hill Jersey Cheese, Inc.*, S.D. Ohio No. 2:15-cv-2820, 2017 WL 4349065, at *4 (Sept. 29, 2017) (holding that "The FAAAA does not preempt state-law breach of contract claims, but courts are 'limited to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.'"); *ASARCO LLC v. England Logistics Inc.*, 71 F.Supp.3d 990, 1006-08 (D.Ariz.2014*)* (holding that negligence claim was preempted, but breach of contract claim not preempted); *Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, D.N.J No. 17-553-SDW-LDW, 2017 WL 3868702, at *3 (Sept. 5, 2017) (holding that "the FAAAA and ICCTA do not preempt routine breach of contract claims"); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F.Supp.2d 638, 643 (N.D. Tex.2010) (determining that 49 U.S.C. 14501 broadly preempts state law claims except for breach of contract and noting that "preemption is not to interfere with contractual obligations between two private parties").

{¶20} The basis for these decisions is the United States Supreme Court decision *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817 (1995), where the Court construed a similarly-worded preemption provision in the federal Airline Deregulation Act ("ADA"). The Court held that the ADA's preemption provision did not foreclose suits alleging breach of the carrier's "own, self-imposed undertakings" as these did not constitute a "violation of state-imposed obligations." *Id.* at 228. As explained in *Heliene, Inc. v. Total Quality Logistics, LLC*, S.D. Ohio No. 1:18-cv-799, 2019 WL 4737753, at *3 (Sept. 27, 2019), citing *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797-98 (6th Cir.2016), "[t]he rationale is that, while section 14501(c)(1) preempts state-imposed obligations, section

14501(c)(1) does not preempt self-imposed obligations." (Emphasis sic).

{¶21} This was not an issue raised in *Red Chamber* because in that case the trial court construed all of RC's claims as tort-based theories of liability and found they were preempted under 49 U.S.C. 14501. The court specifically construed the count of RC's complaint, which purported to be a claim for breach of contract, as a tort claim. RC did not assign error in this regard and the issue was not otherwise raised in the appeal or addressed by this court.

{¶22} We therefore clarify that those preempted "state law claims" as referred to in *Red Chamber* do not include routine breach of contract claims and are instead claims derived from state law that fall within the ambit of 49 U.S.C. 14501. Based upon the standard of review for a motion to dismiss under Civ.R. 12(B)(6), Trading's complaint sufficiently pleads a claim for breach of contract, a claim not preempted under 49 U.S.C. 14501. Consequently, we sustain Trading's first assignment of error with respect to the common pleas court's dismissal of Count I – Breach of Contract.

{¶23} Pursuant to *Red Chamber*, Trading's negligence claim would be subject to federal preemption. However, Trading claims that its claim is distinguishable from the tort claims alleged in *Red Chamber* because Trading asserts that TQL was negligent in a way other than its arrangement for the transport of the cargo. That is, Trading alleges that TQL was negligent its handling of the insurance claim following the cargo loss. Regardless of the theory of negligence, Trading's only claimed damages arise from the damage to its cargo during interstate transport, relate to TQL's freight brokerage service, and derive from state common law. Accordingly, this court concludes that Trading's negligence claim is preempted under 49 U.S.C. 14501(c)(1).

{¶24} Trading cites two federal district court cases determining that negligence actions against freight brokers were not preempted by 49 U.S.C. 14501(c)(1). *Factory Mut.*

*Ins. Co. v. One Source Logistics, LLC*, C.D. Cal. No.LA CV16-06385 JAK (JPRx), 2017 WL 2608867 (May 5, 2017); *Works v. Landstar Ranger, Inc.*, C.D.Cal. No. CV 10-1383 DSF (OPx), 2011 WL 9206170, at *1 (April 13, 2011). While the decisions of federal courts are persuasive authority, they are not binding. Neither case persuades us to reconsider the conclusion that 49 U.S.C. 14501(c)(1) preempts Trading's negligence claim. Additionally, both cases involve scenarios not present in this case and which suggest that the claims asserted affected the freight broker's "services" in too tenuous a manner as to be preempted under 49 U.S.C. 14501(c)(1).[5] *Factory Mut.* involved a freight broker who hired an unlicensed and unidentifiable carrier who stole the cargo; the shipper was unable to assert a Carmack Amendment claim because it could not locate the unscrupulous carrier. *Landstar* involved allegations of fraud and a cover-up by the freight broker. Here, Trading's negligence claim against TQL relates to its handling of an insurance claim on an interstate cargo shipment it brokered, which is directly related to and would affect TQL's services as a freight broker.

{¶25} Trading argues that the common pleas court erred because it ignored the argument that its claims against TQL were not preempted by the Carmack Amendment. The common pleas court did not ignore the argument; the court explained, as this court did in *Red Chamber*, that it was unnecessary to address the issue of implied preemption under the Carmack Amendment in light of the conclusion that 49 U.S.C. 14501(c)(1) expressly preempted the claims.

{¶26} Trading next argues that the common pleas court improperly concluded that its claims against TQL were preempted under 49 U.S.C. 14501(c)(1) even though that code

---

5. State common law claims that affect broker interstate prices, routes, or services in only a "tenuous, remote, or peripheral manner" may not be subject to preemption. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 252, 133 S. Ct. 1769 (2013).

section was never invoked by TQL as grounds for dismissal either in its motion to dismiss or its reply in support. Trading contends that it was denied a meaningful opportunity to respond to the argument that its claims were preempted. However, TQL cited *Red Chamber* as the basis for the motion. *Red Chamber* discussed, in detail, the preemptive effect of 49 U.S.C. 14501(c)(1). Trading had notice of the statutory basis upon which TQL was claiming preemption.

{¶27} Finally, Trading argues that the court ignored significant factual distinctions between this case and *Red Chamber*. Trading notes that in *Red Chamber*, RC indemnified the trucking company in exchange for payment of $100,000, thereby assuming all responsibility for the trucking company's misconduct. Trading points out that in this case, it did not release or indemnify Fisher. Trading does not explain why this distinction is legally significant. If, for instance, Trading had released Fisher in return for the salvage payment, then it would not change this court's conclusion that 49 U.S.C. 14501(c)(1) preempts Trading's negligence claim against TQL. Based on the foregoing, this court overrules Trading's first assignment of error with regard to Count II – Negligence and affirms the dismissal of that claim. However, Trading's assignment of error is sustained as to the Count I – Breach of Contract, and this matter is reversed and remanded for further proceedings.

{¶28} Assignment of Error No. 2:

{¶29} THE TRIAL COURT ERRED IN DENYING PLAINTIFF/APPELLANT C&D TRADING, INC.'S REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT AGAINST DEFENDANT/APPELLEE TOTAL QUALITY LOGISTICS, LLC.

{¶30} Trading argues that the common pleas court abused its discretion in denying its request to amend the complaint. Pursuant to Civ.R. 15(A), a plaintiff may amend its complaint with leave of court which the court "shall freely give when justice so requires." An appellate court will not reverse a trial court's decision on a motion to amend absent an

abuse of discretion. *Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 44. An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶31} Trading argues, alternatively, that TQL qualified as a motor carrier under federal law because it accepted responsibility for delivery of the margarine. Accordingly, Trading argues that the court abused its discretion by not permitting it to amend its complaint to assert a Carmack Amendment claim against TQL.

{¶32} The court did not abuse its discretion. Trading never alleged that TQL was a carrier and expressly identified TQL in the complaint as a freight brokerage company. The complaint further specified that TQL provided freight brokerage and logistical services. The complaint also included a copy of the TQL customer application form, which was attached to the complaint, and which indicates it was agreed to by Trading's co-owner. The form provides:

> Customer understands that TQL is a transportation broker only who arranges the transportation of freight by an independent third party motor carrier. Customer agrees that TQL will not fill out Bills of Lading and cannot be listed on Bills of Lading as the delivering carrier.

The bill of lading attached to the complaint also confirms that it was signed by a Fisher Trucking driver and was not signed by any representative of TQL.

{¶33} As stated previously, Carmack Amendment claims are only applicable to carriers. 49 U.S.C. 14706(a). Based on the allegations set forth in the complaint, any attempt to plead a Carmack claim against TQL in this case would have been subject to dismissal on the pleadings. Therefore, this court does not find that the common pleas court

abused its discretion in denying Trading's request for leave to amend the complaint.

{¶34} Trading also argues that the court abused its discretion in denying its request to amend because it requested leave less than 28 days after service of the complaint during the time when Trading still had the ability to amend the complaint without leave of court as set forth in Civ.R. 15(A). However, it was Trading's choice not to avail itself of its rights under the Rules of Civil Procedure and the court did not abuse its discretion for this reason. For the foregoing reasons, this court finds no abuse of discretion in the common pleas court's decision. This court overrules Trading's second assignment of error.

{¶35} Judgment reversed in part, affirmed in part, and remanded.

S. POWELL and RINGLAND, JJ., concur.