**[Cite as *In re B.A.K.*, 2022-Ohio-1443.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| B.A.K. | : | CASE NO. CA2021-10-093 |
| | : | O P I N I O N<br>5/2/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20-S000133

Strauss Troy Co., LPA, and Matthew J. Worth, for appellant.

Heyman Law, LLC, and Arrianna S. Sacks, for appellee.

**HENDRICKSON, J.**

{¶ 1} Appellant ("Mother") appeals from a decision of the Warren County Court of Common Pleas, Juvenile Division, determining the child support obligations of appellee ("Father"). For the reasons set forth below, we affirm the effective date of the child support order and the court's use of the federal child care tax credit in determining Father's child support obligation. However, we reverse the trial court's determination of Father's income and remand the matter for the trial court to calculate Father's potential income and

recalculate his child support obligation accordingly.

{¶ 2} Mother and Father entered a romantic relationship and began cohabitating in 2018. In October 2019, their daughter, B.A.K., was born. Mother and Father separated and ceased living together in April 2020. Since that time, Mother has been the sole residential parent and legal custodian of B.A.K. Father has visitation two alternating weekends per month from Saturday morning through Sunday night.

{¶ 3} On August 20, 2020, Mother requested that child support be established. The Warren County Child Support Enforcement Agency ("CSEA") held an administrative hearing on October 1, 2020, and ordered Father to pay $1,147.29 per month in child support, effective October 16, 2020. The CSEA calculated Father's annual gross income as $70,502.50, and Mother's annual gross income as $70,894.25. Mother was given credit for health insurance and child care costs. Following the hearing, Father gave Mother $500 cash in December 2020 for Christmas presents for B.A.K., and $400 cash in January 2021 but provided no further support.

{¶ 4} Mother filed an objection to the administrative hearing decision on the grounds that (1) it did not accurately reflect Father's income and (2) it should have been applied retroactively to the child's birth. The matter was referred to a magistrate, and a hearing was held on May 21, 2021. The magistrate heard testimony from both parents.

{¶ 5} The record reveals that Father is a self-employed truck driver who owns and operates a successful shipping business. In 2018, Father's gross business receipts totaled over $476,000, and in 2019 they totaled over $412,000. In 2020, however, his business was affected by the COVID-19 pandemic. That year, he earned $135,000 in gross receipts, received a long-term, low interest Small Business Administration ("SBA") loan of $149,000, and worked for two months for a different trucking company earning $13,500. Father's business has both expanded and contracted during the five year period the magistrate

examined. He employed one other driver in 2017, but began to purchase additional trucks in 2018, acquiring up to five vehicles at one point before reducing to one vehicle in 2021. Father testified that as of the hearing, he fully owned his own truck and trailer, and that with present load rates, he could earn around $5,000 per week. However, he testified that he voluntarily opts to work an average of only three weeks per month and that he takes summers off. Father testified that he had no plans to re-expand his business in the future, nor to increase his working hours.

{¶ 6} The magistrate issued its decision on June 22, 2021. Using the average of Mother's 2018–20 tax returns, the trial court calculated that Mother earns roughly $72,000 per year and has $3,120 of annual out-of-pocket medical expenses and $11,960 in annual child care expenses for B.A.K. Given the fluctuations in his business in previous years, the magistrate extrapolated Father's 2021 earnings to date, estimating his net income to be $110,691.66. The magistrate additionally found that Father was underemployed. The magistrate ordered Father to pay $1,432.86 per month in support of B.A.K., an increase in his total obligation from the amount ordered by the CSEA. However, Mother's objection to the effective date of the child support was overruled by the magistrate.

{¶ 7} Mother timely objected to the magistrate's decision. After review, the trial court adopted the magistrate's decision in full on September 7, 2021. Mother now appeals, raising the following assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN CALCULATING FATHER'S INCOME FOR PURPOSES OF CHILD SUPPORT.

{¶ 10} Mother first argues that the trial court erred by failing to impute a higher income to Father reflective of a fulltime work schedule despite finding that he was underemployed. "Trial courts enjoy considerable discretion on child support issues, and

their decisions on such matters will not be reversed absent an abuse of discretion." (Citation omitted.) *Shonebarger v. Nelson*, 12th Dist. Warren No. CA2011-04-032, 2012-Ohio-315, ¶ 9. "An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary or unconscionable." *C&D Trading, Inc. v. Total Quality Logistics, LLC*, 12th Dist. Clermont No. CA2020-05-026, 2020-Ohio-6905, ¶ 30. A review for abuse of discretion is a deferential review. *Id.*

{¶ 11} "In calculating child support, a trial court must determine the annual income of each of parent." *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 13. In the case *sub judice*, the court adopted the magistrate's order finding that Father was underemployed. For a parent who is underemployed, "income" is "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(9)(b). If the trial court finds a parent is voluntarily underemployed, it must consider the criteria set forth in R.C. 3119.01(C)(11)(a) to determine the amount of potential income to impute to the parent. *Jestice v. Jestice*, 12th Dist. Warren No. CA2013-07-133, 2014-Ohio-3777, ¶ 8.

{¶ 12} In determining Father's gross income, the magistrate divided Father's gross receipts for the period of January 1, 2021 to May 19, 2021 ($70,887.26) by the number of days during that period (138). The magistrate then multiplied Father's *per diem* earnings ($513.68) by 365 days to find that Father could make $187,491.66 per year. The magistrate subtracted Father's business expenses ($6,400 per month, or $76,800 per year) to establish a projected gross income of $110,691.66 for 2021. *See Combs v. Walsh*, 12th Dist. Butler No. CA2005-07-198, 2006-Ohio-7026, ¶ 20 ("When determining the gross income of a self-employed parent, the trial court is to deduct ordinary and necessary expenses from the parent's gross receipts."). Notably, the evidence at the hearing established that during this period, Father only worked three days in January and four days in February, though he

worked "every week" in March, April, and May, up to the time of the hearing.

{¶ 13} The magistrate's methodology was a sound way to produce a reasonably accurate gross income for Father. The magistrate's decision to extrapolate Father's 2021 earnings to the rest of the year rather than look back to previous years was also reasonable. Unlike in past years, at the time of the hearing, Father had no employees to perform additional work and no future plans to hire employees. However, the magistrate erred in its calculation of Father's income by neglecting to determine his potential income. "Potential income includes imputed income that a trial court determines the parent would have earned if fully employed * * *." *Whitaker v. Whitaker*, 12th Dist. Fayette Nos. CA2019-05-008 and CA2019-05-009, 2020-Ohio-2774, ¶ 51. After finding that Father was underemployed, the magistrate was required to determine Father's potential income and use that number in calculating his support obligation. *DiPasquale v. DiPasquale*, 12th Dist. Warren No. CA2016-04-024, 2016-Ohio-8457, ¶ 21, fn. 2. This could have been done by determining the number of additional days Father *should* have worked and imputing the previously established *per diem* rate to calculate his income as if fully employed.

{¶ 14} Although the magistrate's order states that "the Court has considered factors listed in R.C. 3119.01(C)(17)(a) to determine any potential income attributed to Father," there is no evidence in the order that this was actually done. Even though the order increased Father's child support obligation, this increase was based solely on the magistrate's calculation of Father's gross income, rather than Father's "income" as an underemployed parent. The record before us does not contain enough information to ascertain Father's income pursuant to R.C. 3119.01(C)(9)(b). We find that the trial court abused its discretion by adopting the magistrate's order finding Father underemployed without subsequently determining Father's potential income. Mother's first assignment of error is therefore sustained.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED IN ORDERING AN EFFECTIVE DATE OF OCTOBER 16, 2020, FOR THE CHILD SUPPORT ORDER.

{¶ 17} Mother next argues that the trial court abused its discretion by setting October 16, 2020, as the effective date of its child support order. Specifically, Mother asserts that "[i]t is an abuse of discretion for the court to make no award of child support for that period in the absence of an affirmative demonstration of some circumstance which ought to reasonably relieve the parent of the obligation of support and the child of entitlement to the support." That proposition is taken from *Baugh v. Carter*, 3 Ohio App.3d 139, syllabus (1st Dist.1981). However, *Baugh* was decided under a version of R.C. 3111.13 that has long since been revised, and though it was occasionally considered by courts in the years immediately following the statute's revision, it no longer reflects the law of Ohio and we need not consider it. *See Shockey v. Blackburn*, 12th Dist. Warren No. 98-07-085, 1999 WL 326174, *3 (May 17, 1999) (Noting the statutory revision).

{¶ 18} "A father has a duty to support his marital and nonmarital children, alike, * * * [and] may be ordered to pay child support from the date of the child's birth." *Shonebarger*, 2012-Ohio-315, at ¶ 12; *see also* R.C. 3111.13(F)(2). When a court renders child support payment retroactive, the court "shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child." R.C. 3111.13(F)(2).

{¶ 19} Notably, R.C. 3111.13 "does not institute a per se rule that requires or disallows awards of retroactive child support." *Evans v. Richardson*, 10th Dist. Franklin No. 01AP-1328, 2002-Ohio-3555, ¶ 12. Rather, "the statute vests the trial court with the discretion to determine whether a parent must pay a retroactive amount of child support,

and specifies the factors the court can consider in making its decision." *Id.* Contrary to Mother's assertions, and to her citations, "the decision of whether to establish retroactive support is entrusted to the trial court's discretion." *Soukup v. Kirchner*, 11th Dist. Geauga No. 2012-G-3095, 2013-Ohio-2818, ¶ 21.

{¶ 20} In the present case, Mother initially argued that the effective date of the order should be applied retroactively to the child's date of birth, before requesting that child support be applied retroactively to the date of her separation from Father. The trial court weighed the factors enumerated in R.C. 3111.13(F)(2) in determining that the evidence did not support a retroactive award of child support to that date. In doing so, the court found that there was no evidence that Father failed to support B.A.K. prior to the parties separating in April 2020. Additionally, the magistrate found that there was no evidence presented that the child's needs were not being met between April 2020 and October 2020 to justify retroactive support.

{¶ 21} In reviewing the evidence, we find that the trial court did not abuse its discretion in adopting the magistrate's order denying retroactive child support. The magistrate considered "all relevant factors" in deciding not to order retroactive support. R.C. 3111.13. Mother's arguments in support of her position are unsupported and ultimately unconvincing. Mother's second assignment of error is therefore overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ERRED IN CREDITING MOTHER WITH RECEIVING $4,000 FOR THE FEDERAL CHILD CARE CREDIT.

{¶ 24} Mother next argues that the trial court abused its discretion by including the federal child care tax credit on the Child Support Computation Worksheet "without any evidence on the record to support the decision." Mother notes that "no evidence concerning the federal child care credit was offered to the trial court by either party," and that "[n]either

party's proposed child support worksheets included the credit."

{¶ 25} "An appellate court reviews a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard." *Rainey v. Rainey,* 12th Dist. No. CA2010-10-083, 2011-Ohio-4343, ¶ 38. This discretion is both guided and limited by the statutory requirements of R.C. 3119.82. *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 52. "The Internal Revenue Code creates a presumption in favor of the custodial parent in the allocation of the federal income tax dependency exemption." *Pahls v. Pahls*, 12th Dist. Butler No. CA2009-05-001, 2009-Ohio-6923, ¶ 22. Here the court determined that Mother, as the residential parent and sole legal custodian, should receive all federal tax exemptions for B.A.K. The court then completed the Child Support Computation Worksheet.

{¶ 26} When a court calculates a child support order, the court must use the Child Support Computation Worksheet. Ohio Adm.Code 5101:12-1-17(A)(2)(a). When completing the worksheet, the court shall "[e]xclude any reimbursed or subsidized child care cost, *including any state or federal tax credit, whether or not claimed * * *.*" Ohio Adm.Code 5101:12-1-17(C)(3) (Emphasis added.) Specifically, the court "shall exclude any federal dependent care tax credit allowed under section 21 of the Internal Revenue Code 26 U.S.C. 21(revised 12/29/2007)." *Id.* Ohio law similarly provides that the child care cost used in the child support calculation "[s]hall exclude any reimbursed or subsidized child care cost, *including any state or federal tax credit for child care available to the parent or caretaker, whether or not claimed.*" R.C. 3119.05(P)(1)(c) (Emphasis added.) Hence, Mother's *eligibility* for the federal child care tax credit is the determinative factor for the court to consider when calculating Father's support obligation, *not* whether she actually received the tax credit.

{¶ 27} In support of her argument that evidence was required, Mother cites *Pentzer*

*v. Thomas*, 12th Dist. Fayette No. CA99-09-026, 2000 WL 190019 (Feb. 14, 2000). However, we find *Pentzer* is inapposite. In that case, the mother appealed the trial court's order that child tax exemptions should alternate between the parties, even though the mother was the residential parent. We reversed, finding that the trial court failed to make the appropriate findings to award the nonresidential parent with tax benefits. Additionally, the record failed to show the basis for the trial court's decision. *Id.* at *3.

**{¶ 28}** In the case *sub judice*, the court found that Mother was eligible to receive the dependent tax benefits provided under 26 U.S.C. 21(a)(1). This includes the increased amount creditable and increased applicable percentage provided by the American Rescue Plan Act of 2021. *See* 26 U.S.C. 21(g); Pub.L. 117-2, Title IX, § 9631(a), (b), (Mar. 11, 2021). The record demonstrates that the court reached this determination based on Mother's income and her expenditures on child care, which enabled it to calculate the $4,000 credit. The court did not err in including the federal child care tax credit in the worksheet; in fact, it was required to include this information. *See also Coulter v. Coulter*, 12th Dist. Warren No. CA95-11-112, 1996 WL 586777, *4 (Oct. 14, 1996) (reversing the trial court's judgment when it failed to deduct the tax credit from the child care expenses parent incurred before calculating appellant's child support obligation); *Schneider v. Schneider*, 12th Dist. Butler No. CA200-05-089, 2001 WL 76329, *5 (Jan. 22, 2001) (noting that parent erroneously failed to deduct the child care tax credit on the worksheet).[1]

**{¶ 29}** We are sympathetic to Mother's concern that, because the American Rescue Plan Act of 2021 increased the amount creditable and applicable percentage for the federal child care tax credit for the year 2021 only, she will have to request the court recalculate

---

1. The requirement to deduct the child care tax credit from the obligor's child support obligation in *Coulter* and *Schneider* arose from R.C. 3113.215(E) which has since been repealed. However, our analysis in both cases nonetheless also applies under R.C. 3119.05(P)(1)(c).

(and increase) Father's child support obligation for future years. However, this does not mean the court erred in calculating Father's obligations at the hearing in this matter. As such, Mother's final assignment of error is overruled.

{¶ 30} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

PIPER, P.J., and BYRNE, J., concur.